UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

United States of America,

Plaintiff,

v.

Antonio Darrell Holmes,

Defendant.

File No. 25-cr-168 (ECT/LIB)

**OPINION AND ORDER**

---

Timothy Campbell Warner, United States Attorney's Office, Minneapolis, MN, for Plaintiff United States of America.

Wyatt Arneson, Arneson Law Office, Minneapolis, MN, for Defendant Antonio Darrell Holmes.

---

In an Order and Report and Recommendation, ECF Nos. 53–54,[1] Magistrate Judge Leo I. Brisbois (1) denied Defendant Antonio Darrell Holmes's Motion for Disclosure of Informants [ECF No. 31], and (2) recommended that Mr. Holmes's Motion to Suppress Evidence Obtained as a Result of Search and Seizure [ECF No. 30] be denied. Separately, Judge Brisbois denied Mr. Holmes's motion for a *Franks* hearing [ECF No. 29]. *See* Tr. [ECF No. 50] at 119:1–2. Mr. Holmes has objected to the Order, the Report and Recommendation, and the oral order denying his motion for a *Franks* hearing. *See* ECF

[1] The Order and Report and Recommendation is filed under two separate docket entries. *See* ECF Nos. 53–54. The docket text titles ECF No. 53 as the Order and ECF No. 54 as the Report and Recommendation. *Id.* However, the documents filed under the two entries are identical. For efficiency's sake, only ECF No. 54 will be cited throughout this Order.

No. 64. This order addresses those objections. Familiarity with Judge Brisbois's Order and Report and Recommendation is presumed.

I

Begin with Mr. Holmes's objections to the Order. The Order is reviewed for clear error. 28 U.S.C. § 636(b)(1)(A); D. Minn. LR 72.2(a)(3). Judge Brisbois denied Mr. Holmes's Motion for Disclosure of Informants [ECF No. 31], finding that the Government was "not required at this time to disclose the identity of the confidential informants unless the informant's identity is discoverable under *Brady* and its progeny, or the Government's other discovery obligations." ECF No. 54 at 20. Mr. Holmes objects that Judge Brisbois failed to "address either an *in-camera* review [or] Mr. Holmes's Motion for an order directing that non-identifying information be released," as requested in his motion.[2] *See* ECF No. 64 at 2. Mr. Holmes seems to contend that Judge Brisbois should have ordered the disclosure of non-identifying information regarding prior occasions when O.M. provided information to law enforcement. *See* ECF No. 64 at 2–4. Mr. Holmes maintains that O.M. "had a reason not to be truthful about Mr. Holmes when dealing with law enforcement" due to her ongoing child custody dispute with Mr. Holmes. *See id.* at 2. Mr. Holmes also argues that O.M.'s January and March 2023 statements to law enforcement, relied on in search warrants in this case, were inaccurate considered against

[2] Mr. Holmes's objection is limited to his request for non-identifying information or in camera review regarding the individual identified as "CRI#1" in search warrant affidavits, also identified during the course of motion practice as "O.M." *See* ECF No. 64 at 1–4; ECF No. 54 at 2 n.2 (explaining that "throughout Motion practice, O.M.'s identity as CR#1 became apparent").

later conflicting statements O.M. made to Mr. Holmes's investigator in December 2024 and June 2025. *See id.* at 2–3 (citing Def.'s Exs. 7, 8). Mr. Holmes argues that law enforcement thus provided an inaccurate picture of O.M.'s reliability to the judge who subsequently signed the search warrants. *See id.* at 2–3.

I agree with Judge Brisbois's conclusion that Mr. Holmes "has failed to overcome the strong presumption against the disclosure of the identity of the mere 'tipster' informants in the present case." *See* ECF No. 54 at 19–20. As Judge Brisbois concluded, "O.M.'s [December 2024 and June 2025] statements to Investigator Grostyan concern the subjective veracity of O.M.'s statements and do not impact directly whether probable cause to support the various search warrants was objectively established on the totality of the circumstances." *See* ECF No. 54 at 19. If O.M.'s January and March 2023 statements were influenced by O.M.'s child custody dispute, as Mr. Holmes suggests, law enforcement corroborated her statements with their own observations. *See, e.g.*, ECF No. 32 at 23, ¶¶ 14–15. Mr. Holmes fails to establish a connection between the non-identifying information regarding prior occasions of O.M.'s cooperation and what Mr. Holmes suggests are indicia of her lack of reliability. And to the extent Mr. Holmes seeks *in camera* review, he has failed to satisfy his burden of showing that undisclosed information pertaining to O.M. is material to his defense. *See United States v. Clark*, No. 20-cr-223 (WMW/LIB), 2021 WL 5630791, at *3 (D. Minn. Dec. 1, 2021) (citing *Carpenter v. Lock*, 257 F.3d 775, 779 (8th Cir. 2001)); *see also United States v. Oliver*, 950 F.3d 556, 563 (8th Cir. 2020) (stating that "mere speculation that undisclosed information is material is not enough to compel . . . *in camera* review" of evidence pertaining to a confidential informant

(citation modified)). Accordingly, Mr. Holmes's objection to the Order denying his motion for disclosure of informants [ECF No. 31] will be overruled.

II

Mr. Holmes's objection to Judge Brisbois's oral order denying the *Franks* hearing, *see* Tr. at 119, also reviewed for clear error, will be overruled. Although Mr. Holmes's specific objection is unclear, he argues that the information in the search warrants "contained multiple misstatements of fact and material omissions of facts that should be stricken from the probable cause portions of the . . . warrants." *See* ECF No. 64 at 8. Mr. Holmes had the opportunity to examine the law enforcement officers who contributed information to the search warrant affidavits, *see* Tr., and he does not identify any clear error in Judge Brisbois's denial of the *Franks* hearing. Accordingly, this objection is overruled.

III

Regarding Mr. Holmes's objections to the Report and Recommendation, the standard of review is *de novo*. 28 U.S.C. § 636(b)(1); D. Minn. LR 72.2(b)(3). Mr. Holmes's suppression motion initially addressed evidence obtained from the initial seizure of Mr. Holmes's vehicle and pursuant to six warrants:

1. *Vehicle Search Warrant.* Minnesota State District Court Judge Eric L. Hylden issued a warrant authorizing the search of Mr. Holmes's 2010 black BMW 528 vehicle. ECF No. 32 at 19–28. The warrant was signed September 12, 2023. *See id.* at 28.

2. *Red Rock Search Warrant*. Judge Hylden issued a warrant authorizing the search of 1210 North Red Rock Trail. ECF No. 32 at 31–41. The warrant was signed September 12, 2023. *See id.* at 41.

3. *DNA Warrant*. Judge Hylden issued a warrant authorizing a DNA buccal swab of Mr. Holmes. ECF No. 32 at 44–53. The warrant was signed September 13, 2023. *See id.* at 53.

4. *July 11, 2024 Warrant*. Minnesota State District Court Judge Dale O. Harris issued a warrant authorizing searches of Mr. Holmes, 1434 91st Avenue West in Duluth, and a blue 2017 Toyota Rav4. ECF No. 32 at 56–66. The warrant was signed July 11, 2024. *See id.* at 65.

5. *iPhone Search Warrant*. Judge Harris issued a warrant authorizing an iPhone search. ECF No. 32 at 68–78. The warrant was signed July 12, 2024. *See id.* at 78.

6. *DNA Comparison Search Warrant*. Minnesota State District Court Judge Leslie E. Beiers issued a warrant authorizing a DNA buccal swab of Mr. Holmes. ECF No. 32 at 80–89. The warrant was signed July 15, 2024. *See id.* at 89.

Judge Brisbois concluded that probable cause existed to support the initial towing or seizure of Mr. Holmes's vehicle, and he recommended denying the motion to suppress evidence flowing from that initial seizure and the subsequent K-9 sniff while the Vehicle Search Warrant was being drafted. *See* ECF No. 54 at 33. Judge Brisbois also determined that the Vehicle Search Warrant, the Red Rock Warrant, and the DNA Warrant were justified by probable cause and thus recommended that the Motion to Suppress be denied. *See id.* at 40–43. Judge Brisbois recommended the Motion to Suppress be denied insofar

as it sought to suppress evidence found pursuant to execution of the July 11, 2024 Search Warrant, the iPhone Search Warrant, and the DNA Comparison Warrant as "fruit of the poisonous tree."[3] *See id.* at 43–44. And Judge Brisbois concluded that even if any warrant failed to establish probable cause, the officers relied on the state court judges' probable-cause determinations in good faith, and the evidence obtained from the searches was therefore admissible. *Id.* at 44–46; *see United States v. Leon*, 468 U.S. 897, 922 (1984) (explaining good-faith exception).

Mr. Holmes's objections to the Report and Recommendation are threefold. (1) Mr. Holmes argues that information law enforcement received from O.M. should be "stricken from the search warrants" because O.M. was unreliable and had reason to fabricate information about Mr. Holmes, and the information she shared was publicly available. ECF No. 64 at 5–6. (2) Mr. Holmes argues that the information O.M. shared was stale and should not have been used in a probable cause determination. *See id.* at 6. (3) Relying on his previous filings in this case, Mr. Holmes lodges a non-specific objection to the "per se unreasonable" search of his vehicle. *See id.* at 4–5. Take each objection in turn.

[3] Although Mr. Holmes initially challenged all six warrants issued in this case as unsupported by probable cause, at the March 9, 2026 Motions hearing, Mr. Holmes clarified that he only challenged the latter three warrants—namely, the July 11, 2024 Search Warrant, the iPhone Search Warrant, and the DNA Comparison Warrant as "fruit of the poisonous tree" of the Vehicle Search Warrant, the Red Rock Search Warrant, and the DNA Warrant. *See* ECF No. 54 at 21 n.23. The July 11, 2024 Search Warrant, the iPhone Search Warrant, and the DNA Comparison Warrant are not addressed in Mr. Holmes's objections.

(1) Mr. Holmes objects to Judge Brisbois's conclusion that O.M. provided reliable information to law enforcement regarding Mr. Holmes. *Id.* at 5. Specifically, Mr. Holmes argues that information O.M. provided was unreliable because it was publicly available and because O.M. had "reason to fabricate illicit facts about Mr. Holmes and create trouble for him with law enforcement" due to their ongoing custody dispute, which, if revealed as background in the warrants, would have undermined the probable cause determination justifying the initial seizure of his vehicle. *See id.* at 5, 7.

Answering the probable-cause question with respect to information from an informant depends on the totality of the circumstances. *See United States v. Mays*, 993 F.3d 607, 615 (8th Cir. 2021). A "confidential informant's tip may support a reasonable suspicion if it has sufficient indicia of reliability, such as the informant's track record as a reliable source or independent corroboration of the tip." *United States v. Manes*, 603 F.3d 451, 456 (8th Cir. 2010) (citation modified). "Information may be sufficiently reliable to support a probable cause finding if . . . it is corroborated by independent evidence." *United States v. Evans*, 4 F.4th 633, 637 (8th Cir. 2021) (quoting *United States v. Keys*, 721 F.3d 512, 518 (8th Cir. 2013)). And "[w]here some information is independently corroborated, it is permissible for the issuing judge to conclude the informant and the remaining information provided are reliable, even if uncorroborated." *Id.* Even "corroboration of minor, innocent details can suffice to establish cause." *Id.* (citation omitted).

Under those criteria, the challenged information is reliable. O.M. provided information to law enforcement in January and March 2023 that Mr. Holmes was selling narcotics and in possession of a firearm, and that he would sometimes keep the firearm in

his vehicle. *See* ECF No. 32 at 22. This information was not publicly available. Other information O.M. provided to law enforcement was independently verified by law enforcement's observation—including the make, model, and color of Mr. Holmes's car, the name and location of Mr. Holmes's girlfriend, the girlfriend's address, and the make, model, and color of her car. *See* ECF No. 54 at 27. As Judge Brisbois concluded, "[e]ven the corroboration of minor, innocent details can suffice to establish probable cause." *United States v. Buchanan*, 574 F.3d 554, 562 (8th Cir. 2009) (citation omitted). Moreover, O.M. provided this information in person to officers who had the ability to assess her credibility. *See United States v. Neal*, 528 F.3d 1069, 1074 (8th Cir. 2008) (finding that officer's ability to assess credibility of confidential informants when he interviewed them in person supported informant's reliability); *United States v. Bell*, 480 F.3d 860, 863 (8th Cir. 2007) (finding that informant's reliability and credibility was supported by willingness to meet with law enforcement personally). And O.M. also had a history of providing accurate and reliable information to law enforcement. As stated in the Vehicle Search Warrant Application:

> [O.M.] has provided reliable information that has been corroborated through independent law enforcement investigation to include a check of police reports and information from other law enforcement agencies, other confidential reliable informants and your affiant's own personal knowledge. [O.M.] has provided information in other narcotics investigations that has proven to be accurate and reliable. [O.M.] has provided information that led to at least three search warrants and the arrest of at least four individuals.

ECF No. 32 at 22. Considering the totality of circumstances, information provided by O.M. was sufficiently reliable for purposes of determining the existence of probable cause.

Mr. Holmes argues that information O.M. provided to law enforcement lacked reliability because O.M. had an ongoing custody dispute with Mr. Holmes that would motivate her to fabricate information about Mr. Holmes to law enforcement. *See* ECF No. 64 at 5–7. Mr. Holmes suggests that law enforcement "purposeful[ly]" excluded this information from the search warrant affidavits because it would have "cast doubt onto the reliability of O.M." *See id.* at 7. This is not persuasive. The Eighth Circuit has explained that "omissions of facts in a supporting affidavit do not constitute misrepresentations unless they cast doubt on the existence of probable cause." *See United States v. Butler*, 594 F.3d 955, 961 (8th Cir. 2010) (citation omitted). Here, the existence of the custody dispute between O.M. and Mr. Holmes does not vitiate the independently corroborated information provided by O.M. and O.M.'s history of reliability establishing the existence of probable cause. Mr. Holmes's objection as to O.M.'s reliability due to the ongoing custody dispute will be overruled.

(2) Mr. Holmes generally argues that the warrants' probable cause determinations were based on stale information. ECF No. 64 at 6. The Report and Recommendation analyzed whether the information in the Vehicle Search Warrant, the Red Rock Search Warrant, and the DNA Warrant was stale, concluding that the warrants were not based on stale information. *See* ECF No. 54 at 33–37. "A warrant becomes stale if the information supporting the warrant is not sufficiently close in time to the issuance of the warrant and the subsequent search conducted so that probable cause can be said to exist as of the time of the search." *United States v. Johnson*, 848 F.3d 872, 877 (8th Cir. 2017) (citation modified). Courts do not apply a "bright-line test" to determine whether information is

stale; they look to the circumstances of the case, including "the lapse of time since the warrant was issued, the nature of the criminal activity, and the kind of property subject to the search." *United States v. Gibson*, 123 F.3d 1121, 1124 (8th Cir. 1997) (citation omitted). "Where continuing criminal activity is suspected, the passage of time is less significant." *Id.* at 1125 (quoting *United States v. LaMorie*, 100 F.3d 547, 554 (8th Cir. 1996)). Judge Brisbois properly concluded that the warrant affidavits here included information demonstrating that alleged criminal activity was continuing in nature and corroborated by more recent information suggesting that criminal activity was ongoing. *See* ECF No. 54 at 35 (citing Gov't Exs. 1–3 [ECF No. 32 at 19–54]). This includes information law enforcement received from O.M. in January and March 2023, indicating that Mr. Holmes was involved in selling heroin and fentanyl, often on the Fond du Lac Indian Reservation, that he was in possession of firearms, and that he would keep a firearm in his vehicle. ECF No. 32 at 22. And both the Red Rock Warrant and DNA Warrant applications included law enforcement's observations of Mr. Holmes that corroborated ongoing criminal activity—including O.M.'s September 12, 2023 report that Mr. Holmes was selling narcotics and had access to firearms, and information law enforcement received from A1, a former employee for the company that managed the complex Mr. Holmes's girlfriend lived, describing neighbor complaints regarding short term traffic going from 1210 North Red Rock Trail and suspected drug activity. *See* Red Rock Warrant Application at ¶¶ 28, 30 [ECF No. 32 at 36–37]; DNA Warrant Application at ¶¶ 28, 30 [ECF No. 32 at 48–49]. "In investigations of ongoing narcotics operations, intervals of weeks or months between the last described act and the application for a warrant [does] not

necessarily make the information stale." *See United States v. Davis*, 867 F.3d 1021, 1028 (8th Cir. 2017) (quoting *United States v. Smith*, 266 F.3d 902, 905 (8th Cir. 2001)) (finding that information in warrant was not "fatally stale" where "officers had reason to believe that [defendant] had continually sold methamphetamine for over a year").

(3) Mr. Holmes generally objects that "law enforcement's search of [his] vehicle was 'per se unreasonable'" and thus "any evidence that was discovered by this search should be suppressed and essentially stricken from the [Vehicle Search Warrant] in this case." ECF No. 64 at 4–5.

Pursuant to the Fourth Amendment, warrantless searches are *per se* unreasonable unless one of the carefully drawn exceptions applies. *Coolidge v. New Hampshire*, 403 U.S. 443, 454–55 (1971). Under the "automobile exception," a warrantless search of a vehicle is justified when there is probable cause to believe that the automobile "contains contraband or evidence of criminal activity." *United States v. Shackleford*, 830 F.3d 751, 753 (8th Cir. 2016). Probable cause "may be based on the collective knowledge of all law enforcement officers involved in an investigation and need not be based solely upon the information within the knowledge of the officer on the scene if there is some degree of communication." *Id.* at 753–54 (quoting *United States v. Wells*, 347 F.3d 280, 287 (8th Cir. 2003), *cert. denied*, 541 U.S. 1081 (2004)). The permissible scope of a search under the automobile exception is "defined by the object of the search and the places in which there is probable cause to believe that it may be found." *United States v. Ross*, 456 U.S. 798, 824 (1982). According to the Eighth Circuit:

> The automobile exception may apply even when there is little to no chance that the vehicle will be moved or its contents destroyed. *Cady v. Dombrowski*, 413 U.S. 433, 441–42 (1973). Officers armed with probable cause "may conduct a warrantless search of the vehicle, even after it has been impounded and is in police custody." *United States v. Bettis*, 946 F.3d 1024, 1030 (8th Cir. 2020) (quoting *Michigan v. Thomas*, 458 U.S. 259, 261 (1982) (per curiam)). The automobile exception continues to apply to impounded vehicles when an immediate search could have been conducted on the scene. *Brewer v. Wolff*, 529 F.2d 787, 792 (8th Cir. 1976) (interpreting *Texas v. White*, 423 U.S. 67 (1975)).

*United States v. Soderman*, 983 F.3d 369, 376 (8th Cir. 2020).

I agree with Judge Brisbois's determination that the search and seizure of Mr. Holmes's vehicle was permitted under the automobile exception. *See* ECF No. 54 at 23–33. To the extent Mr. Holmes's non-specific objection rests on his argument that O.M. lacked reliability to support a probable cause determination, I have determined above that O.M. was a reliable informant. Additional information supports a determination of probable cause to believe Mr. Holmes's vehicle contained contraband. On September 12, 2023, Probation Officer ("PO") Adams arrived at O.M.'s apartment after receiving a text from O.M. that her boyfriend was in her apartment, he had violated an order for protection, and he had assaulted O.M. Tr. at 12–13. Mr. Holmes poked his head out of the apartment window, and when PO told Mr. Holmes that he was under arrest, Mr. Holmes came outside, told PO Adams that he did not need to listen to him, and "postured in a way where he put his hands into his waistband area, indicating he had a concealed weapon" such that PO Adams "took cover behind a wooden fence." *See* Tr. at 13–14. Soon after this interaction, law enforcement located Mr. Holmes's vehicle at the Damiano Center. As Judge Brisbois

concluded, "the potential likelihood of evidence in [Mr. Holmes's] Vehicle was at [that] time reasonably high." ECF No. 54 at 25. Probable cause existed for law enforcement to conduct a warrantless search of Mr. Holmes' vehicle under the automobile exception.

Mr. Holmes's vehicle was towed to Duluth Police Department headquarters while Deputy Nevanen drafted the search warrant. ECF No. 50 at 29–32. That is where Investigator Stutsman conducted the K-9 sniff which resulted in the K-9, Maverick, alerting to the odor of controlled substances. ECF No. 50 at 56–60. Although Mr. Holmes does not specifically object to Magistrate Judge Brisbois's conclusions regarding the K-9 sniff, Mr. Holmes previously argued that the K-9 sniff was conducted after an unreasonable delay, and that it had errors undermining any alert or indication that Maverick made. ECF No. 51 at 5. To the extent Mr. Holmes seeks to incorporate those arguments in his objection to the vehicle search's reasonableness, I agree with Judge Brisbois's conclusion that "given the K-9 sniff was conducted while Deputy Nevanen was already in the process of drafting the Vehicle Search Warrant, which took approximately two and a half hours," there was no unreasonable delay for purposes of facilitating a K-9 sniff. ECF No. 54 at 32. Mr. Holmes also previously challenged Investigator Stutsman's failure to record the K-9 sniff or that Maverick alerted to the trunk or passenger side door when the ion swab detected under the driver's side floor mat, but Mr. Holmes offers no authority for the premise that K-9 sniffs must be recorded, or that search parameters are limited to the specific area of the vehicle where a dog alerts. *See* ECF No. 51 at 5–6. And to the extent Mr. Holmes incorporates previous arguments into his generalized objection of the vehicle search's reasonableness, the argument that Maverick's alerts were somehow compromised because

the public safety garage has evidence stored in cages that "could have contained narcotics" is speculative. *Id.* at 5. In sum, law enforcement's search of Mr. Holmes's vehicle was permitted under the automobile exception and the vehicle's search was not per se unreasonable.

**ORDER**

Therefore, based on the foregoing, and on all the files, records, and proceedings herein, **IT IS ORDERED**:

1. Defendant's Objections to the Order and Report and Recommendation [ECF No. 64] are **OVERRULED**.

2. The Report and Recommendation [ECF No. 54] is **ACCEPTED**.

3. The Order [ECF No. 53] is **AFFIRMED**.

4. Defendant's Motion to Suppress Evidence Obtained as a Result of Search and Seizure [ECF No. 30] is **DENIED**.

Dated: September 10, 2026

s/ Eric C. Tostrud
Eric C. Tostrud
United States District Court